**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 03-CR-43-EA |
| QUINTEN PHILLIP SHRECK, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

This case is before the undersigned United States Magistrate Judge pursuant to the Court's referral of all discovery issues under 28 U.S.C. § 636(b)(1)(A). [Dkt. 151].  As more fully detailed herein, the undersigned has conducted hearings and issued orders in an effort to balance the Defendant's need to adequately investigate and prepare his defense, with the Government's interest in enforcing provisions of the Child Pornography Act of 1996. The Government's response to those efforts [Dkt. 214] will not enable the Defendant to adequately investigate and prepare his defense.  In the absence of a proposal by the government which enables the Defendant to adequately investigate and prepare his defense in compliance with the Order of February 8, 2006, [Dkt. 208], the undersigned RECOMMENDS that Counts 2-178 of the Third Superceding Indictment [Dkt. 80] be DISMISSED.

## Background

The Defendant has been charged, in Counts 2-178 of the Third Superceding Indictment, with knowingly possessing or attempting to possess computer graphic image files containing visual depictions involving the use of a minor engaged in sexually explicit conduct in violation of the Child Pornography Prevention Act of 1996 (the Act), 18 U.S.C. § 2252(a)(4)(B). [Dkt. 80, pp. 2-10].

The Government has taken the position that certain necessary investigatory and preparatory tasks if undertaken by defense counsel would constitute criminal conduct under the Act.  Defendant filed a Notice Regarding Discovery [Dkt. 185-sealed] which placed at issue the ability of defense counsel to adequately investigate and prepare a defense to Counts 2-178 in light of the Government's position.  On January 27, 2006, the undersigned held an *ex parte* hearing to enable counsel to demonstrate the necessity of the proposed investigatory and preparatory tasks.  On January 31, 2006, with all counsel present, the undersigned conducted a hearing and announced the following findings and conclusions:

> [I]t's my conclusion that in order for the defense attorneys to adequately prepare their case that it's necessary for them to have access to the internet, including internet sites that may contain content that violates the law; and it's also necessary for them to be able to create and/or manipulate images that may also violate the law.  I also conclude that it's necessary for them to be able to do those two things, that is access the internet and create or manipulate images without fear of being prosecuted.

[Dkt. 199, p. 3].

In an attempt to accommodate the parties' competing interests, the undersigned proposed that the defense investigation and preparation could be conducted at the courthouse, under court supervision with no dissemination of any materials outside this case, and with a clear assurance by the Government that defense counsel and experts would not be prosecuted for activities performed under the proposed procedure.  The parties were given the opportunity to file responses to the Court's proposal.  The Government's response, [Dkt. 201], failed to address the Court's findings concerning necessary defense investigation and preparation.  Therefore the Court ordered the Government to make the following available to the defense:  1) access to the internet,

including internet sites that may contain content that violates the law; and 2) the ability to create and/or manipulate images that may also violate the law, with the clear assurance that the access to the internet and creation of or manipulation of images for the defense in this case will not result in prosecution of defense counsel or experts (February 8 Order). [Dkt. 208, pp. 8-9].  The Government was advised it could comply with the Order by agreeing to the proposal made by the court, or by forwarding another proposal that fully satisfied the foregoing requirements without impinging on the Defendant's attorney-client privilege or work product protection.  *Id*. at 9.

The Government declined to agree to the Court's proposal and offered its own proposal that failed to comply with the February 8 Order and is wholly inadequate for Defendant's needs.  The Government's proposal literally places internet access in the hands of the Government, precludes internet access to sites other than those visited by the Defendant, excludes defense counsel from the process, restricts the creation and manipulation of images and limits protection from prosecution to the Northern District of Oklahoma.[1]

_____

[1]  The Government's proposal contained the following features: 1) designation of a firewalled law enforcement agent and Assistant United States Attorney (AUSA) to be available for five consecutive business days between 9am and 5pm and be present while one designated defense expert visits internet sites, defense attorneys will not be permitted to be in the room when the investigation is occurring; 2) all investigation will be performed on a government-owned computer at a location of the government's in the Tulsa area; 3) the agent will access the internet sites at the direction of the defense expert, no one other than the agent may handle the keyboard, mouse, or touch pad of the computer; 4) the defense expert may only visit internet sites that had been visited by the defendant prior to his arrest in September 2002, the expert may not access internet sites not connected to the evidence in this case, nor ask the agent to search the internet generally for child pornography websites, newsgroups, or chat rooms; 5) the agent may download images or capture screen images and save them to an external medial, which information should immediately be placed under seal and maintained at the Clerk's office; 6) the defense expert may make and maintain handwritten notes but may not remove or possess any images or external media containing the images; 7) no federal prosecution will be brought in the Northern District of Oklahoma against Defendant's designated expert or his attorneys for actions which fall within the parameters of the government's proposal or for their review or presentation in court of images or material found as a result of the investigation conducted within the parameters of the government's proposal; 8) neither defense counsel nor experts will be permitted to create or manipulate

(continued...)

The Defendant's response to the Government's proposal sets forth the deficiencies and problems with the Government's proposal.  Defendant agreed to the Court's proposal with certain modifications. [Dkt. 219, pp. 2-5].[2]

## DISCUSSION

In the February 8, 2006, Order, the undersigned discussed the basis for concluding that internet access and the ability to create and manipulate images without fear of prosecution is necessary for the defense to adequately investigate and prepare a defense. The parties' competing interests were also considered. [Dkt. 208, pp. 5-8].  That discussion will not be repeated here.

The Court must now determine what consequence should flow from the Government's unwillingness to adopt a position that would afford the defense team reasonable access to necessary information.   The remainder of this Report and Recommendation will consider whether dismissal of Counts 2-178 of the Third Superceding Indictment is the appropriate consequence.

The undersigned considers the following information to be significant.  First, a review of the transcript of the *ex parte* hearing held on January 27, 2006, [Dkt. 218-sealed],

---

[1](...continued)
images such that the images depict children engaged in sexually explicit conduct or lasciviously exhibiting their genitals. [Dkt. 214, pp. 3-6].

[2] Defendant proposed to rent an office space at the Oneok Building in Tulsa, Oklahoma with locked and secured access equipped with a computer purchased by Defendant and used only by defense counsel and experts; only defense counsel would have keys to the office.  No monitoring by any government agent would be permitted, as that would intrude upon the attorney-client privilege.  Following the conclusion of the trial, all data would be overwritten or the computer will be destroyed, all admissible image exhibits submitted would be admitted under seal.  The Government would be required to provide a letter from the Department of Justice signed by an individual possessing the authority to prevent any investigation, search, arrest or prosecution of defense counsel and its experts anywhere in the United States for activities performed in the representation of Mr. Shreck.  The letter would  list the names of defense counsel and experts and would  be communicated to each United States Attorney's office in the United States, as well as to the court and defense counsel. [Dkt. 219 pp. 9-11].

4

confirms the findings that: it is necessary for the defense team to be able to access the internet and create or manipulate images without fear of being prosecuted. [Dkt. 199, p. 3].

Second, this is not a situation of so-called "gray mail" where a defendant poses an apparently unsolvable problem in hopes of obtaining a dismissal. This fact is demonstrated by the forwarding of Defendant's proposal for conducting the necessary tasks. [Dkt. 219].

Third, although the problem has evolved into one of constitutional dimension, it need not be so. The entire problem would be avoided if the Government would simply adopt the same reasonable and practical approach toward implementation of the Act for the defense team that it applies to its own conduct. Despite the absolute terms of the statute, the Government does not restrict law enforcement or private citizens assisting law enforcement from engaging in conduct that is violative of the statute. Nor does the Government seek to impose those limits on the Court or jury. If the Government would accord the defense the same treatment so they could perform their proper function, the entire problem would be resolved.

In the February 8, 2006 Order, the Government was advised that the defendant's inability to engage in tasks which the undersigned found are necessary "may result in the deprivation of Defendant's Fifth Amendment due process right to the 'basic tools' and the 'raw materials integral to' the presentation of an adequate defense[.]" [Dkt. 208, p. 8]. The Government was also advised that "the government may not be allowed to proceed against Defendant as to counts 2-178, absent a response by the government which satisfies the Court's finding that the tasks discussed are necessary." *Id.* The Government's response,

5

[Dkt. 214], did not satisfy the Court's requirements and is wholly inadequate for Defendant's needs.

There are no cases construing the Child Pornography Prevention Act of 1996 which address the issue before the Court.[3]  Therefore the Court has considered cases in three areas which present similar considerations: classified information cases, informant identity cases, and immunity cases.

### Classified Information Cases

Congress has recognized that it is the exclusive prerogative of the executive branch of government to decide whether to disclose classified information in the course of a trial. The Classified Information Procedures Act. (CIPA) 18 U.S.C. App. III §§ 1, *et seq.*, establishes procedures for making use of such information.

First, the defendant must notify the court and prosecutor about any classified information he intends to disclose at trial.  The government may then request a hearing for the court to determine the use, relevance, or admissibility of the information.  If the court authorizes disclosure of the information, the government is given the opportunity to admit relevant facts, or submit a substitution summary of specific information.  The court then

---

[3] There are a few cases addressing discovery under the Act.  In *United States v. Hill*, 322 F.Supp.2d 1081 (C.D. Calif. 2004), the defendant was indicted for possession of child pornography found on computer media.  Defendant moved for copies of the media seized from his home.  He sought to obtain two "mirror image" copies of the computer medial analyzed by the government's expert to allow his own expert to conduct a forensic analysis and his counsel to prepare his defense.  The Government opposed production, but offered to permit the defendant to view the media in an FBI office and to conduct analysis in the government lab.  The court granted defendant's request, concluding that defendant would be seriously prejudiced if his expert and counsel were denied copies of the materials.  Further, there was no indication that defense counsel or expert could not be trusted.

Under similar circumstances, the Court in *United States v. Kimbrough*, 69 F.3d 723, 731 (5th Cir. 1995) took the opposite view.  There the Court found that the government's offer to make charged materials available for inspection but not to allow them to be copied was reasonable and not violative of Fed.R.Crim.P. 16(a)(1)(C).

considers whether the statement or summary will provide defendant with substantially the same ability to make his defense as would disclosure of the classified information.  If the substitution is denied, the Attorney General may bar disclosure of the classified information, in which case the court must fashion an appropriate remedy ranging from exclusion of testimony to dismissal.

Under the CIPA, dismissal of an indictment is authorized only if the government has failed to produce an adequate substitute for the classified information and the interests of justice would not be served by a lesser sanction.  *United States v. Moussaoui*, 382 F.3d 453, 477 (4th Cir. 2004).

There are parallels in the CIPA to this case.  First Defendant expressed his need to conduct internet research and to manipulate images without fear of prosecution.  The Government expressed its clear objection to the performance of those tasks, as violative of the Act.  The undersigned has determined that the tasks defense counsel and experts seek to perform are necessary ones.  The Government has been given the opportunity to propose a means of enabling the defense team to perform necessary tasks in a way that would satisfy the Government's concerns.  The Government's proposal is not adequate for reasons previously discussed.  This case has thus reached a point where the court must fashion a remedy for the Government's refusal to permit defense counsel and experts to conduct necessary research and investigative tasks without disruption of the attorney-client relationship and fear of prosecution.

## Informant Identity Cases

What is referred to as the informer's privilege permits the government to withhold from disclosure the identity of persons who furnish information of violations of the law to law

enforcement officers. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).  However, where the disclosure of an informer's identity, or the contents of his communication with law enforcement, is relevant and helpful to the defense of an accused, or is essential to the determination of a cause, the trial court may require disclosure.  If the government withholds the information, the trial court may dismiss the action.  *Id.* at 628. There is no fixed rule for when disclosure may be required.  The public interest in protecting the flow of information to law enforcement is balanced against the accused's right to prepare his defense.  The particular circumstance of the case, the crime charged, possible defenses, and the significance of the informer's testimony are among the factors considered.  *Id.* at 628-29.

Applying similar considerations to this case requires the Court to balance the Government's interest in preventing the defense from committing a violation of the Act on the one hand against the Defendant's interest in presenting his defense and the public's interest in the accurate resolution of criminal cases based on the adversary system on the other.  It is important to note that although the text of the Act admits of no exceptions for activities conducted in the course of defending a criminal defendant, the Act provides no exception for law enforcement or prosecution activities either.  Although knowing receipt of child pornography over the internet is a crime, government agents are free to search the internet for incriminating images.  Federal prosecutors and agents are permitted to possess and handle offending images and to share them, via mail or computer transmission, with other law enforcement agencies.  Defendant asserts that offending images are also shared with non-profit, non-governmental organizations such as the National Center for Missing and Exploited Children. [Dkt. 219, p. 6].  These activities are, of course, necessary for

8

effective enforcement of the Act.  However, investigative and research activities are also necessary for the defense team to perform.  Whether defense activities will produce material information cannot be known until the work is performed.  So, the materiality of the information does not fit well into the balancing equation.  However, it is not difficult to imagine that the accuracy of the trial may be seriously compromised if the defense is denied access to the tools necessary to explore and test the evidence presented by the government.

The tasks necessary for the defense to perform will not result in the exploitation of any child.  To the extent the Government argues that the very viewing of images exploits involved children, the tasks performed by the defense will not involve any greater exploitation than the Government's performance of those same tasks does.  Further, the defense tasks will not result in the production of any new exploitative images, or the dissemination of existing images outside of the defense team, court and jury.  Consequently, the Government's interest in excluding the defense team's access to the information is very low and far outweighed by the defense team's interest in access to the information as a means to prepare for trial and to discover possibly exculpatory information.

**Immunity Cases**

The Sixth Amendment provides a criminal defendant the right to present a defense by compelling the attendance and presenting the testimony of his own witnesses.  That right is essentially the right to present a defense.  A fair trial requires that a criminal defendant have the opportunity to present his version of the facts, so the jury may decide

9

where the truth lies. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 875, 102 S.Ct. 3440, 3450, 73 L.Ed.2d 1193 (1982) (O'Connor, J., concurring).

The right has limits, for instance a defendant does not have the right to present testimony which is incompetent, privileged or otherwise inadmissible under the Rules of Evidence. *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005), *cert. denied,* 126 S.Ct. 277 (Oct. 3, 2005). Further, a criminal defendant's right to present a defense does not include the right to compel a witness to waive the witness's Fifth Amendment privilege against self incrimination. *Id.* However, the government cannot substantially interfere with a defense witness's decision to testify. Interference is substantial when a government actor discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering.

In *Serrano*, the Tenth Circuit clearly reaffirmed its position that a district court does not have the inherent authority to grant immunity to secure testimony. Such an order can only be entered on the request of a United States attorney with proper approval of the Attorney General. *See* Immunity of Witness Act, 18 U.S.C.§§ 6001-6005. However, the Tenth Circuit noted that it is an open question "whether a district court could compel a United States attorney, on pain of dismissal, to grant immunity when the prosecutor deliberately denies immunity in an attempt to distort the fact finding process." *Serrano*, 406 F.3d at 1218 n.2, *citing United States v. Hunter*, 672 F.2d 815, 818 (10th Cir. 1982) ("Courts have no power to independently fashion witness use immunity under the guise of due process." Not deciding whether prosecution could be forced choose between conferring immunity or suffering acquittal). *Accord United States v. Chalan*, 812 F.2d 1302, 1310 (10th Cir. 1987), *cert. denied,* 488 U.S. 983 (1988); *United States v. LaHue,* 261 F.3d

10

993, 1014-15 (10th Cir. 2001); *See also McGee v. Crist,* 739 F.2d 505, 509 (10th Cir. 1984) (collecting cases).

The Circuits are divided on the question whether a district court could compel a United States attorney, on pain of dismissal, to grant immunity when the prosecutor deliberately denies immunity in an attempt to distort the fact finding process. The First, Second, Fourth, Seventh, and Ninth Circuits appear to have decided that under the right circumstances a grant of immunity may be compelled under pain of dismissal.[4] The Eighth Circuit has held that the Court has no authority to compel a grant of immunity.[5] The Fifth, Sixth and Tenth Circuits have not decided the question.[6]

There is no contention or finding by the undersigned that this case involves prosecutorial misconduct. The case does, however, present similar concerns. Activities which are necessary for the defense team to conduct in order to adequately represent the Defendant will place defense counsel and experts at risk of prosecution.[7] Since the

---

[4]  *United States v. Moussaoui*, 382 F.3d 453, 467 (4th Cir. 2004) (Consistent with the majority rule, the Fourth Circuit has held that a district court may compel the government to grant immunity upon a showing of prosecutorial misconduct and materiality); *United States v. Mackey,* 117 F.3d 24, 27 (1st Cir.1997) (stating that in certain extreme cases of prosecutorial misconduct, government's refusal to grant immunity may justify dismissal of prosecution); *United States v. Westerdahl,* 945 F.2d 1083, 1086 (9th Cir.1991) (court may compel government to grant immunity to potential defense witness when the fact-finding process is intentionally distorted by prosecutorial misconduct"); *Blissett v. Lefevre,* 924 F.2d 434, 441-42 (2d Cir.1991) ([A] trial court should order the prosecutor to grant a defense witness immunity only in extraordinary circumstances."), *and United States v. Frans,* 697 F.2d 188, 191 (7th Cir.1983) ("[W]e have implied that review [of refusal to grant immunity] may be proper if there is a clear abuse of discretion violating the due process clause.")

[5]  *United States v. Bowling*, 239 F.3d 973, 976-77 (8th Cir. 2001)(holding that district court has no authority to compel government to grant immunity).

[6]  *United States v. Talley,* 164 F.3d 989, 997 (6th Cir.1999) (noting that the Sixth Circuit has not yet decided whether, and under what circumstances, a district court could compel the government to grant immunity to a potential witness); *Autry v. Estelle,* 706 F.2d 1394, 1401 (5th Cir.1983) (leaving open possibility that compelled grant of immunity may be justified by prosecutorial misconduct).

[7]  The concern about fear of prosecution is not merely theoretical in light of the Government search of Attorney Dean Boland's home and seizure of his computer and in light of the tenor of the Government's filings.

11

Government has refused to make reasonable accommodations such that defense counsel and experts can proceed without fear of prosecution, it can be said that the Government's position threatens to distort the fact finding process and thereby impair Defendant's right to a fair trial.  This case therefore presents a situation where it is appropriate to consider dismissal.  The position the Government has chosen to take cannot be reconciled with Defendant's right to access the evidence necessary to attempt to defend himself against the pending charges.

## CONCLUSION

The lesson drawn from the three areas discussed above is that when the Government controls the evidence necessary for the defense, the Government must make the evidence, or an effective substitute, available to the defense or suffer the dismissal of its case.  In *United States v. Moussaoui*, 382 F.3d 453, 471 (4th Cir. 2004) the Court said the following with respect to the Sixth Amendment right to compulsory process as an integral part of the adversarial criminal justice system:

> The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.  The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.  The vary [sic] integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."

The principles recognized by the *Moussaoui* Court are applicable to this case as well.   In the present case the Government has elected to withhold access to evidence from the defense.  In the absence of a proposal by the government which enables the Defendant to adequately investigate and prepare his defense in compliance with the Order of February

12

8, 2006, [Dkt. 208], the undersigned RECOMMENDS that Counts 2-178 of the Third Superceding Indictment [Dkt. 80] be DISMISSED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within ten (10) days of being served with a copy of this report.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the district judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); see also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a  "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 1st day of March, 2006.

Frank H. McCarthy

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

13