**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CR-0043-CVE |
| | ) | |
| QUINTEN PHILLIP SHRECK,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is defendant Quinten Phillip Shreck's motions to dismiss the second

superseding indictment  (Dkt. ## 170, 181) as well as the United States's objection (Dkt. # 221) to

the report and recommendation (Dkt. # 220) of United States Magistrate Judge Frank H. McCarthy.

Also before the court are defendant's oral motions to stay (Dkt. # 230) and to certify the ruling on

defendant's motions to the Tenth Circuit (Dkt. # 230).

**I.**

The second superseding indictment[2] charges defendant with 156 counts of violating the Child

Pornography Prevention Act of 1996 ("CPPA").  In all but one[3] of those counts the United States

---

[1]     Defendant's correct name is Quinten Phillip Schreck, even though the indictment (Dkt. # 1) and second superseding indictment (Dkt. # 80) names him as "Quinton."  Accordingly, those indictments are hereby amended by interlineation.

[2]     The second superseding indictment was originally incorrectly titled "Third Superseding Indictment."  The Court amended the document by interlineation at a hearing held October 13, 2005.

[3]     Count one charges defendant with knowingly possessing or attempting to posses one or more videotapes containing a visual depiction produced by using material transported in interstate commerce, the production of which involved the use of a minor engaged in sexually explicit conduct.  Second Superseding Indictment (Dkt. # 80).

alleges that defendant knowingly possessed or attempted to possess computer graphic image files containing visual depictions of minors engaged in sexually explicit conduct, as that term is defined by statute, in violation of 18 U.S.C. § 2252(a)(4)(B).  Defendant seeks dismissal of those 155 counts on constitutional grounds.[4]

At the outset, the Court offers an account of this matter's procedural history, which has been somewhat unusual due to changes in counsel and in judges.[5]  In October 2003, defendant filed a motion to dismiss the original indictment (Dkt. # 29) on the ground that the statute at issue is unconstitutionally vague and overbroad.  At the heart of the defense motion was a challenge to the statute's use of the term "knowingly" to define  the state of mind necessary for a violation of section 2252.  Defendant argued that computer technology is currently sufficiently sophisticated that a defendant cannot determine whether what he is viewing is an actual or virtual image of a child and, therefore, that the statute does not put a defendant on notice of the prohibited conduct.  In an Order dated April 12, 2004 (Dkt. # 61), the Court directed the parties to be prepared to offer evidence relating to the defense motion at a hearing to be held April 15, 2004.  Dean Boland, who, at the time of the hearing, served as a defense expert on technology issues, prepared exhibits, including images of minors which Boland had digitally altered to appear to be engaged in sexually explicit conduct.  He traveled from his home in Ohio to Oklahoma to attend the hearing.  During the government's

---

[4]     Although defendant's motions seek dismissal of the entire indictment, his arguments relate exclusively to his challenge to the government's charges against him based upon his possession of digital images allegedly obtained via the Internet.  He does not explain how the present discovery dispute is relevant to Count One, which charges him with possessing a homemade videotape depicting a child engaged in sexually explicit conduct.

[5]     This case was originally assigned to then-United States District Judge Sven Erik Holmes until it was transferred to the undersigned on March 15, 2005.

cross-examination of Boland, counsel for the United States engaged in a line of questioning that alerted both defense counsel and the Court that the United States was contemplating criminal charges against Boland. Defense counsel expressed concern, and the Court assured both parties that Boland created the images by order of the Court. Transcript of Proceedings, April 15, 2004, at 139-40. At the close of the hearing, the Court also directed Boland to download copies of the images onto three disks to be distributed to the parties and and to delete the images from his computer. Id. at 143-44.[6] On April 15, 2004, Boland provided defense counsel with written confirmation that he had complied with the Court's directive.[7]

Approximately a year later, in May 2005, Boland disclaimed his designation as an expert and entered an appearance as defense counsel. His new status entitled him to possess the images in question. Although the Court is without aid of many of the facts surrounding the events which prompted the current controversy, it is undisputed that Boland became the subject of a criminal investigation in the Northern District of Ohio. A federal magistrate judge in that district issued a warrant, authorizing the search of his person, his automobile, and his home. The affidavit offered in support of the warrant identifies images which the Court's April 2004 Order permitted Boland to possess. Motion to Dismiss [Second] Superseding Indictment on the Basis of Entrapment by Government Estoppel (Dkt. # 139), Ex. B1-B2, Affidavit in Support of Search Warrant.[8] Federal law enforcement officers searched Boland's home and person and seized numerous items, including

---

[6] The Court ultimately denied defendant's motion to dismiss (Dkt. # 76).

[7] At a subsequent hearing, it became clear that Boland had not purged the images from his hard drive. Transcript of Motion Hearing, October 13, 2005, at 44-45. He has assured the Court that he has made no attempt to retrieve the images from his hard drive.

[8] The parties agree that the affidavit makes no mention of this Court's order permitting Boland to possess the images.

items relating to his role in this case.  It is now clear that the United States considers Boland's creation of the digitally altered images for the April 15, 2004 hearing, even though done in defense of his client, to be violative of the federal child pornography statute.[9]  The United States has since repeatedly made clear that it considers defense counsel's anticipated further discovery activities, including visiting web sites which may contain child pornography and creating images depicting children in sexually explicit situations, to be violations of the federal statute.

Apprised of the search and seizure of Boland's property and the position of the government relating to the defense's expected preparation, defense counsel became greatly concerned about their ability to offer a vigorous defense of their client -- specifically, in the way of pretrial discovery -- in the face of the threat of federal prosecution. This Court referred all discovery matters, including those implicating defense counsel's ability to prepare for trial adequately, to Magistrate Judge McCarthy.  After conducting an ex parte hearing with defense counsel concerning their intentions for trial preparation, Magistrate Judge McCarthy made the following findings at a hearing with all parties present:

> It's my conclusion that in order for the defense attorneys to adequately prepare their case that it's necessary for them to have access to the [I]nternet, including [I]nternet sites that may contain content that violates the law; and it's also necessary for them to be able to create and/or manipulate images that may also violate the law.  I also conclude that it's necessary for them to be able to do those two things, that is[,] access the [I]nternet and create or manipulate images without fear of being prosecuted.

---

[9]    With its passage of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today, or "PROTECT," Act in 2003, Congress amended the CPPA to include any "computer or computer-generated image or picture" within the statutory definition of "child pornography."  See 18 U.S.C. § 2256(8).

Transcript of Proceedings, January 31, 2006, at 3.  Magistrate Judge McCarthy offered the parties a proposal which sought to balance the defendant's need for effective trial preparation with the government's interest in successfully prosecuting violations of the CPPA.  He recommended that defense preparation that could conceivably constitute violations of the statute be conducted within the courthouse in a designated office with a designated Internet line.

The United States rejected that proposal and, at the direction of the magistrate judge, offered its own plan ("the government plan"), the chief features of which are as follows: (1) the presence of a law enforcement agent to assist a defense expert in viewing web sites, who, alone, would be permitted to touch the computer -- e.g., move the mouse, type in Internet addresses; (2) the assignment of an Assistant United States Attorney to address any issues arising in the course of the work process;[10] (3) the use of a government-owned computer at a location of the government's choice at times within a government-determined time period; (4) an absolute restriction on defense counsel's ability to visit Internet sites other than those allegedly visited by defendant prior to his arrest; (5) a requirement that defense counsel immediately place under seal and file with the Court all screen images downloaded and captured and that counsel not remove those documents from the courthouse; (6) a prohibition on the creation or manipulation of images to make images depicting minors engaged in sexually explicit conduct; and (7) an assurance that no federal prosecution will be brought against the designated defense expert or defense counsel in the Northern District of Oklahoma for actions taken in compliance with the government plan.

---

[10]     Under the United States's proposal, both the agent and the designated AUSA are absolutely prohibited from discussing the case with anyone other than defense counsel, defense experts, the Court, or each other.  In other words, a firewall would prohibit communication with the prosecution team, among others.

The defendant filed a brief with the magistrate judge taking issue with all of the features of the government plan. Defendant argued that the government plan's prohibition on the presence of a defense attorney during investigation on the Internet blindfolded defense counsel and that the presence of a federal law enforcement agent would impermissibly inhibit the defense expert's ability to explore the necessary Internet sites. Defendant further contended that it demonstrated to Magistrate Judge McCarthy the need for the creation of images, not using known minors, that may still be illegal.

For the purposes of trial, the defendant characterized the government plan as unworkable, both as a matter of administration and fairness. According to defendant, the government plan raises questions about the ability of the defense, the jury, and the Court to handle explicit images during the course of the trial. Moreover, defendant argued, the image of a federal agent controlling and retrieving defense counsel's evidence during trial irreparably impugns the trustworthiness of defense counsel and provides a psychological advantage to the United States. Finally, defendant asserted that the United States's position regarding the legality of the discovery activities defense counsel seek to pursue and its refusal to provide nationwide immunity from prosecution for defense counsel precludes the most effective defense available.

Defendant offered his own alternative to the magistrate judge's proposal ("the defense plan"), which permits unfettered access to the Internet via a computer purchased by defendant and located within office space rented by the defense and inaccessible to anyone other than defense counsel. A government agent would not be permitted to be present during defense counsel's use of this facility. The defense plan would permit defense counsel to secure its exhibits and other evidence "in the same way the government's counsel and experts do." Defense Brief in Response

6

to Magistrate Judge Order (Dkt. # 219), at 11.  The plan also requires a letter from an authorized member of the United States Department of Justice granting immunity from investigation, search, arrest, or prosecution of defense counsel and experts to be distributed to every United States Attorney's office in the country.

In a report and recommendation issued March 1, 2006, Magistrate Judge McCarthy determined that the government plan was "wholly inadequate for [d]efendant's needs."  Report and Recommendation (Dkt. # 220), at 3.   Drawing parallels to cases involving immunity, the government's obligation to release the names of confidential informants, and the Classified Information Procedures Act, 18 U.S.C. 18 U.S.C. app. 3 §§ 1-16, the Magistrate Judge determined that the United States has effectively withheld access to evidence necessary for defendant's defense and recommended that the Court dismiss the relevant counts.  The United States objected to that recommendation of the magistrate judge.

## II.

Throughout the course of these proceedings, defendant has filed motions to dismiss the indictments on numerous constitutional grounds.  The motions at issue here spring from the parties' dispute over defense counsel's need to commit acts that are arguably in violation of the CPPA in order to defend their client.  Defendant seeks a declaration from the Court that 18 U.S.C. § 2252 is facially unconstitutional, because it denies effective assistance of counsel and due process of law in violation of the United States Constitution and is unconstitutional as applied to him for the same reasons.

7

**A.**

The Court begins with defendant's facial challenge to section 2252. "Facial challenges are strong medicine." Ward v. Utah, 398 F.3d 1239, 1246 (10th Cir. 2005). In Sabri v. United States, 541 U.S. 600 (2004), the Supreme Court urged caution against the use of facial challenges:

> We add an afterword on Sabri's technique for challenging his indictment by facial attack on the underlying statute, and begin by recalling that facial challenges are best when infrequent. . . . Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks. Facial adjudication carries too much promise of premature interpretatio[n] of statutes on the basis of factually bare-bones records.

Id. at 608-09. A facial challenge to an act of Congress is "the most difficult challenge to mount successfully, since the challenger must establish no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see also Colorado Wild v. United States Forest Serv., 435 F.3d 1204, 1214 (10th Cir. 2006) (same).

Defendant has failed to meet this heavy burden. As the United States points out, one can easily conceive of child pornography prosecutions where the concerns raised by defendant are completely irrelevant to the particular facts. Count one of the superseding indictment, for example, raises none of these concerns. The Court is unprepared to declare that, in every child pornography prosecution under section 2252, defense counsel would be required to engage in activities that are proscribed under the statute for the purposes of their client's defense. For that reason, the Court denies defendant's facial challenge to the statute.

**B.**

Although defendant does not frame his alternative arguments as an as-applied challenge to the statute, he argues, in essence, that the statute is unconstitutional as applied to him because it

8

precludes his attorneys from effectively representing him and deprives him of due process of law. The Court addresses those claims in turn.

## 1.

The Supreme Court has long held that the Sixth Amendment protects a right to assistance of counsel and recognized that the promise of counsel is necessary to guarantee the fundamental right to a fair trial.  See Strickland v. Washington, 466 U.S. 668, 684 (1984) (collecting cases).  The right to counsel would be meaningless if that right did not bear with it an assurance that the counsel rendered would be effective.  See id.

In Strickland, the Court observed that government may violate the right to effective assistance "when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."  Id.  The cases identified by the Court in Strickland involved statutes or rules governing trial procedure which effectively limited communication between defense counsel and his or her client or undercut defense counsel's ability to make discretionary decisions regarding how to proceed at trial.  See Geders v. United States, 425 U.S. 80, 91 (1976) (trial judge's order sequestering all witnesses and preventing counsel from consulting with client during overnight recess violated Sixth Amendment); Herring v. New York, 422 U.S. 853, 863 (1975) (New York statute permitting trial judge to deny defense counsel opportunity for summation at the close of a bench trial violated Sixth Amendment); Brooks v. Tennessee, 406 U.S. 605, 612 (1972) (Tennessee statute requiring that defendant testify as first defense witness or not at all deprived defendant of the "guiding hand of counsel"); Ferguson v. Georgia, 365 U.S. 570, 596 (1961) (Georgia statute precluding defense counsel from questioning defendant on direct examination violated Fourteenth Amendment right to due process).  In none of those cases did

counsel assert a need to violate federal law for the purposes of an effective defense.  Nor did the defendants in those cases challenge an otherwise valid criminal statute.

Subsequent cases recognized the possibility that prosecutorial activities may interfere with the attorney-client relationship to such an extent that it constitutes a violation of the Sixth Amendment's promise of effective assistance.  See, e.g., Weatherford v. Bursey, 429 U.S. 545, 554 (1977); Shillinger v. Haworth, 70 F.3d 1132, 1138 (10th Cir. 1995) ("[U]nder some circumstances a defendant's Sixth Amendment rights may be violated by the state's intrusion into the attorney-client relationship."); United States v. Kelly, 790 F.2d 130, 134 n.1 (D.C. Cir. 1986) ("Although Strickland and Pinkney involved ineffective assistance of counsel claims, their reasoning applies equally to Sixth Amendment cases involving government intrusions into the defense camp, since the effect of such intrusions is to deny the criminal defendant effective assistance of counsel.").  The cases in which courts have applied this principle are united by one predominant feature, that is, an allegation of affirmative actions on the part of the government which compromised the attorney-client relationship.  United States v. Danielson, 325 F.3d 1054 (9th Cir. 2003) (considering allegation of Sixth Amendment violation when government attorneys wrote and retained memoranda containing privileged trial strategy information and recorded, listened to, transcribed, and retained the tapes and transcripts containing the privileged information and failed to produce information for defendant or defense counsel); United States v. Chavez, 902 F.2d 259 (4th Cir. 1990) (addressing Sixth Amendment claim brought by defendant where federal agent engaged in ex parte contact with defendant without defense counsel present); Sinclair v. Schriber, 916 F.2d 1109 (6th Cir. 1990) (evaluating plaintiffs's section 1983 claim that federal agents violated their Sixth Amendment right to counsel by conducting surveillance of phone conversations between defendants and their defense

counsel in the midst of a pending criminal case); <u>United States v. Mastroianni</u>, 749 F.2d 900, 904-08

(1st Cir. 1984) (examining Sixth Amendment claim where the state authorized a government

informant to attend a defense meeting and where government agents subsequently debriefed

informant regarding substance of meeting).  Here, defendant does not accuse the government of any

such behavior.

Moreover, defendant's ineffective assistance claim is puzzling because of its ex ante

character.  Sixth Amendment effective assistance challenges typically arise after an adverse trial

determination.  Following an adverse judgment, a defendant alleging ineffective assistance must

demonstrate, <u>inter alia</u>, that some failing on the part of defense counsel prejudiced his trial

proceedings.  <u>Strickland</u>, 466 U.S. at 687.  It is unusual, therefore, for defendant to seek a pretrial

declaration that his counsel will be, rather than have been, ineffective.[11]  The Court does not have the

predictive powers necessary for such a determination.

The Court concludes that defendant has not demonstrated interference with the attorney-client

relationship in violation of his right to effective assistance of counsel.  It also declines to declare,

prior to trial, that section 2252 has rendered his attorneys ineffective to such an extent that prejudice

is an inevitability.  The Court proceeds, then, to defendant's Fifth Amendment claim.

---

[11]     The Sixth Amendment does not command perfection, in any event.  Courts evaluate attorney
performance under a "highly deferential standard," <u>United States v. Brooks</u>, 438 F.3d 1231,
1242 (10th Cir. 2006), and an attorney's performance must be merely "reasonably effective."
<u>Strickland</u>, 466 U.S. at 687.  This Court does not read the Sixth Amendment's promise of
effective assistance to require counsel to be able to do whatever they wish in pursuit of their
client's interests, especially when those wishes involve violations of the law.

**2.**

Defendant's due process claim under the Fifth Amendment is two-pronged.  He argues, first, that the United States's refusal to sanction his attorneys' unfettered use of the Internet is tantamount to denying him access to evidence that could aid in his defense.  Second, he contends that, because government counsel and those involved in the investigation and prosecution of this case may engage in a number of activities proscribed by statute and, therefore, off limits to defense counsel, his attorneys are unfairly incapacitated.

Defendant's first claim is premised on the view that the United States, by refusing to anoint defense counsel's actions, is withholding exculpatory evidence from defendant.  In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id. at 87.  In Brady, the prosecution failed to provide defendant with evidence that his co-defendant had, in extrajudicial proceedings, admitted to the actual killing of the victim with whose murder the government charged both defendants.  Brady argued that the information could have affected the jury's sentencing decision in his favor and that the government's failure to turn over that information violated his right to due process.  The Court agreed.

Defendant's attempt to link the lesson of Brady to the instant case is strained, however.  In Brady and its progeny, the government possessed control over discrete information, which the United States could transmit or communicate to the defendant.  Defendant argues that "the United States has grabbed the entire Internet and withheld it from Mr. Shreck's defense," Motion to Dismiss for Constitutional Violations (Dkt. # 181), at 4, but this both overstates the extent of the United States's

12

control over the desired information and misconstrues the nature of the circumstances.  Defendant identifies no piece of information which he seeks in his defense.  Rather, he seeks license for his counsel to explore the Internet for information which may or may not assist him in his defense.  Further, the United States does not control access to the Internet.  To the extent defense counsel desire to assist their client in ways that do not violate federal law, they are free to do so and to utilize the Internet in so doing.  The United States's refusal to approve of or grant nationwide immunity for activities that violate federal law is not the equivalent of actively withholding evidence that could assist defendant.

Cases following Brady expressly rejected the proposition that the case establishes a constitutionally protected right to discovery in a criminal proceeding.  United States v. Bagley, 473 U.S. 667, 675 n.7 (1985) ("An interpretation of Brady[v. Maryland] to create a broad, constitutionally required right to discovery would entirely alter the character and balance of our present systems of justice."); Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case and Brady did not create one. . . . "[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.") (internal citation marks omitted);  United States v. Hernandez-Muniz, 170 F.3d 1007, 1011 (10th Cir. 1999) (quoting Weatherford).  As the Court explained in Bagley, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." 473 U.S. at 675.  The Court has no reason to believe that the United States possesses any such evidence.[12]

_____

[12]    There has been no allegation that the United States has refused to comply with its obligations under Rule 16, and the defense presumably has access to the images that are the bases of the second superseding indictment.

13

The Court is also unpersuaded by defendant's argument that the Fifth Amendment's promise of due process requires absolute symmetry between the abilities of the respective parties.  In a case involving a claim of use immunity by a defendant, the Second Circuit provided an eloquent exposition on the disparities inherent in the criminal justice system:

> A criminal prosecution, unlike a civil trial, is in no sense a symmetrical proceeding. The prosecution assumes substantial affirmative obligations and accepts numerous restrictions, neither of which are imposed on the defendant. . . . The system of criminal law administration involves not only this procedural imbalance in favor of the defendant, but also important aspects of the [g]overnment's law enforcement power that are not available to the defendant. Few would seriously argue that the public interest would be well served either by extending all of these powers to those accused of crime or by equalizing the procedural burdens and restrictions of prosecution and defendant at trial.  Viewed in isolation, there is a surface appeal to the equal availability of use immunity for prosecution and defense witnesses.  But in the context of criminal investigations and criminal trials, where accuser and accused have inherently different roles with entirely different powers and rights, equalization is not a sound principle on which to extend any particular procedural device.  At a minimum, such a principle will not support a constitutional interpretation of Fifth Amendment fairness.

United States v. Turkish, 623 F.2d 769, 774 (2d Cir. 1980).  The Constitution does not promise that the government and the defendant will be in all ways equal.  Agents of the federal government regularly engage in the handling of contraband for the purposes of investigation and prosecution of federal crime.  Defendant offers no support for the proposition that because government bodies engage in such activities to prosecute crimes, attorneys for defendants are similarly entitled to engage in those activities and posses prohibited items, and the Court finds none.  Accordingly, for the foregoing reasons, the Court denies defendant's due process challenge to the statute.

## III.

The Court declines defendant's invitation to declare 18 U.S.C. § 2252 unconstitutional on its face or to declare the statute unconstitutional as applied to defendant.   The Court notes, however,

14

that the United States has repeatedly indicated throughout this dispute that if defendant had genuine concerns regarding his counsel's ability to pursue his defense, he could address them to the Court and that they could be resolved without dismissal.  See Government's Response to Defendant's Motion to Dismiss (Dkt. # 182), at 2 ("Any concerns about discovery . . . can be resolved by the parties in advance of trial."); id. at 4 ("As a general proposition, if there was a task the defense wanted to undertake but was concerned about, he could have raised the issue with the United States and the court.").  Defendant has done so, and his protests have yielded competing discovery proposals from both parties and a report and recommendation from the magistrate judge that the indictment be dismissed due to the United States's failure to comply with the dictates of the magistrate judge's discovery order.   The Court now considers the appropriateness of the magistrate judge's recommendation.

The magistrate judge determined that a proper discovery proposal must meet three requirements: (1) provide access to the Internet, including sites that may contain content that violates the law; (2) enable defense counsel to create and/or manipulate images that violate the law; and (3) provide assurance that counsel's activities taken in defense of their client will not result in their prosecution.  Because the Court concludes that the government plan, with certain modifications, substantially fulfills those requirements, the Court rejects the recommendation of the magistrate judge insofar as it relates to dismissal of the indictment.

**1.**

The government plan permits the defense access to the Internet, but limits that access to the ability to visit sites allegedly visited by defendant prior to his arrest.  Having reviewed the transcript of the January 27, 2006 ex parte hearing before the magistrate judge, the Court is unconvinced that

15

defendant requires the ability to pursue sites beyond those defendant is accused of visiting.

Defendant insists that the presence of a federal agent responsible for utilizing the computer will chill the communications of defense counsel and impermissibly impede trial preparation.  If defense counsel wish to converse outside of the agents' presence, they may do so, either by moving to an adjoining room during the course of the discovery activities or consulting with one another some time other than the designated Internet discovery period. Insofar as defendant's argument implies that the designated agent is not to be trusted to maintain the secrecy imposed by the government plan, the Court rejects the suggestion that a duly authorized law enforcement agent of the United States government will violate the prohibition imposed upon him.  The agent and the AUSA assigned to this matter will be firewalled, and the United States has made clear that either individual may be held in contempt for speaking with anyone other than the defense team, the Court, or each other about defense counsel's activities.   This sufficiently assures the confidentiality of the defense's communications while in the room conducting the necessary discovery.   Finally, whatever defendant's concerns about the administrative burdens imposed by the government plan, nothing in the magistrate judge's previous orders requires providing access in a manner, and at a time, that is most convenient for defense counsel.[13]

The Court amends the government plan in one respect, however.  The government plan prohibits the presence of any of the members of defendant's legal team during the Internet searches. The Court sees no compelling reason to exclude defendant's counsel from the room during the

---

[13]     Any concerns defendant has raised regarding the handling of images and other contraband at trial are administrative matters the Court can resolve closer to trial.

discovery process.  Therefore, one of defendant's lawyers may accompany the defense expert permitted to be present under the government plan.[14]

**2.**

The magistrate judge also determined that defendant requires the ability to retain images, the creation and possession of which are violations of the CPPA.  Having reviewed the transcript of the proceedings at the January 27, 2006 ex parte hearing before the magistrate judge, the Court is, again, unpersuaded that defense counsel require the ability to create additional images, virtual or real, depicting minors involved in sexually explicit activity.  The approval of such activities is not necessary in the interest of equity, as the United States has made clear that it has no intention to craft prohibited images to prosecute defendant.  Transcript of Motion Hearing, October 13, 2005, at 68; United States's Objections to the Magistrate's Report and Recommendation (Dkt. # 221), at 31 ("Under no uncertain terms does any Government agent for any reason ever create any kind of images that might be illegal.  . . . Government agents do not literally recreate the crime in an attempt to obtain evidence to convict a defendant, in contrast to what the defense seeks to do here in alleged pursuit of exculpatory information.").  Further, defense counsel can sufficiently make their arguments and points relating to the ease of creating digital images that are indistinguishable from actual images, and the difficulty in knowing the difference, without creating images that depict minors in sexually explicit situations.

---

[14]     The Court assumes that the government plan does not preclude defense counsel from removing documents that it is legal to possess.

**3**.

Finally, the magistrate judge determined that defense counsel require an assurance that they would not be prosecuted for discovery activities in this matter.  The United States has offered an agreement that the United States Attorney's Office for the Northern District of Oklahoma will not prosecute defense counsel or defense experts for actions taken in compliance with the government plan.  Defendant objects that the proffered immunity is an insufficient guarantee of protection.

There is no statutory authority for the award of immunity to counsel, but it is well-established that the allocation of immunity for witnesses is the prerogative of the executive branch.  United States v. Serrano, 406 F.3d 1208, 1217-18 (10th Cir. 2005); United States v. Moussaoui, 382 F.3d 453, 466 (4th Cir. 2004) ("The circuit courts . . . have uniformly held that district courts do not have any authority to grant immunity, even when a grant of immunity would allow a defendant to present material, favorable testimony.").  Case law arising over the issue of immunity usually address the application of the Immunity of Witnesses Act, 18 U.S.C. §§ 6001-6005, and, at their heart, concern a defendant's entitlement to the testimony of a witness who has claimed the protections of the Fifth Amendment's privilege against self-incrimination.

Even if the Immunity of Witnesses Act could properly be applied to defense counsel, there is no evidence in this case of the type of extraordinary circumstances that would warrant dismissal. The courts of appeals are not in agreement on the issue of whether a district court may compel the United States to award immunity by threatening dismissal of a pending indictment.  The courts recognizing such a power have made clear, however, that dismissal by a trial court is appropriate only in the presence of extraordinary circumstances, usually, where the prosecution is charged with misconduct.  See, e.g., United States v. Mackey, 117 F.3d 24, 27 (1st Cir. 1997)  (noting that "in

18

certain extreme cases of prosecutorial misconduct, the government's refusal to grant immunity to justify a court's refusal to allow the prosecution to proceed"); United States v. Abbas, 74 F.3d 506, 512 (4th Cir. 1996) (noting that district court may compel prosecution to grant immunity when defendant makes a showing of prosecutorial misconduct and that evidence provided by testimony would be material, exculpatory, and unavailable from all other sources); United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir. 1991) ("A criminal defendant is not entitled to compel the government to grant immunity to a witness . . . We have recognized an exception to this rule in cases where the fact-finding process is intentionally distorted by prosecutorial misconduct, and the defendant is thereby denied a fair trial.") (internal citation omitted);  Blissett v. Lefevre, 924 F.2d 434, 441 (2d Cir. 1991) ("Absent exceptional circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it. . . . Indeed, a trial court should order the prosecutor to grant immunity only in extraordinary circumstances.") (internal citations and quotation marks omitted); United States v. Frans, 697 F.2d 188, 191 (7th Cir. 1983) (noting that review of prosecutor's immunity decision is appropriate only where there is evidence of "a clear abuse of discretion violating the due process clause").   Even were the Court to overcome its serious reservations regarding the applicability of the Witness Immunity Act to a situation involving defense counsel, there has been no showing of either misconduct or abuse of discretion on the part of the United States attorneys prosecuting this case.  Indeed, the magistrate judge expressly found that "[t]here is no contention or finding by the undersigned that this case involves prosecutorial misconduct."  Report and Recommendation (Dkt. # 220), at 11.

In sum, it is simply not within this Court's authority, conferred either by constitutional provision or by statute, to extract from the United States a promise of nationwide immunity from

19

prosecution for actions taken in the course of trial preparation.  Nor has the defendant provided any legal support for the proposition that the Court may dismiss the indictment because the United States has refused to provide nationwide immunity to defendant's counsel.  The United States's offer of immunity would protect defense counsel and their experts from prosecution in this district for activities taken within this district, and the Court can demand no more.[15]

### IV.

Defendant has moved to have the Court's ruling on its various dismissal motions certified to the United States Court of Appeals for the Tenth Circuit. The certification procedure provided under 28 U.S.C. § 1292(b) is expressly limited to civil actions.[16]  Defendant could, however, attempt immediate appeal of this Opinion and Order pursuant to the collateral order exception to the final judgment rule embodied in 28 U.S.C. § 1291.[17]  The collateral order exception permits appellate review of a pretrial order when that order (1) conclusively determines a disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment.  <u>Sell v. United States</u>, 539 U.S. 166, 176 (2003);

---

[15]     If the government promise is insufficient  to protect counsel who reside in a different state, that is a concern beyond the Court's purview.  Defendant chose to retain an attorney from outside the state of Oklahoma, as is certainly his right.  It is not incumbent upon the Court, however, to advise out-of-state counsel as to how to proceed in a manner that will not subject him to criminal prosecution outside of this district.

[16]     Section 1292(b) provides that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).

[17]     Under section 1291, the courts of appeals have jurisdiction of appeals from all "final decisions" of the district courts of the United States.  28 U.S.C. § 1291. In most cases, this provision precludes interlocutory review by an appellate court.

United States v. Ambort, 193 F.3d 1169, 1171 (10th Cir. 1999).  In criminal matters, the court of appeals applies the collateral order exception "with the utmost strictness."  Id.  Ascertaining the Tenth Circuit's jurisdiction under  the collateral order exception is not a matter for this Court, and the parties may direct their briefing on that subject to the appellate court should defendant attempt appeal of this Opinion and Order.  See City of New York v. Beretta U.S.A. Corp., 234 F.R.D. 46, 52 (E.D.N.Y. 2006) (declining to "step into the shoes of the Second Court of Appeals and decide whether the collateral order doctrine is a basis for the pending interlocutory appeal"); Keystone Tobacco Co., Inc. v. United States Tobacco Co., 217 F.R.D. 235, 239 (D.D.C. 2003) (noting that analysis as to collateral order doctrine "takes place only in the court of appeals.").

## V.

For the reasons outlined herein, the Court hereby **denies** defendants' motions (Dkt. ## 170 and 181) to dismiss  on constitutional grounds.  Because the Court concludes that the government's plan complies substantially with the directives of the magistrate judge, dismissal is not warranted, and the United States's objection (Dkt. # 221) to the report and recommendation of the magistrate judge (Dkt. # 220) is hereby **sustained** and the magistrate judge's recommendation of dismissal is hereby **rejected**.  If defense counsel wish to engage in activities that are conceivably violations of the CPPA, they must comply with the government plan as modified in this Opinion and Order.  The parties are directed to consult with each other and proceed with discovery pursuant to the government plan as modified in this Opinion and Order.  If additional issues arise regarding the execution of the plan, the parties may notify the Court.

Defendant's oral requests that the Court's Order be certified to the Tenth Circuit Court of Appeals (Dkt. # 230) and that this matter be stayed in the meantime (Dkt. # 230) are hereby **denied**.

Having reviewed the second superseding indictment, the Court observes certain irregularities in the numbering of the counts. For example, Count 21 appears twice and numerous counts have been deleted. The parties are directed to advise the Court no later than **May 30, 2006** whether they object to amendment by interlineation of the numbering of counts in the second superseding indictment and, if not, to submit a joint proposed renumbering chart.

Finally, defendant's first name in the original indictment (Dkt. # 1) and second superseding indictment (Dkt. # 80) is misspelled. Those indictments are hereby amended by interlineation. Defendant's correct name is Quinten Phillip Schreck.

**IT IS SO ORDERED** this 23rd day of May, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT